**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SEYOUNG RA,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 17-5211** |
| | : | |
| **GERHARD'S, INC., et al.** | : | |
| | : | |
| **Defendants.** | : | |

**Goldberg, J.**                                                                                           **January 3, 2019**

## MEMORANDUM

Plaintiff SeYoung Ra has sued his former employers Defendants Gerhard's, Inc., Charles "Bud" Gerhard III, Richard Gerhard, and Gerald Gerhard (collectively, "Defendants") seeking to recover damages under the Fair Labor Standards Act of 1939 ("FLSA"), 29 U.S.C. § 201, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, the Pennsylvania Minimum Wage Act ("PMWA"), 42 Pa. Cons. Stat. § 333.101, the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. § 260.1, and a common law theory of breach of contract.  Defendants move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, I will deny the Motion to Dismiss.

## I.      FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint:[1]

---

[1]      In deciding a motion under Federal Rule of Civil Procedure, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

Defendant Gerhard's, Inc. ("Gerhard's") operates a retail appliance business with five locations throughout the Delaware Valley. Defendants Bud Gerhard, Richard Gerhard, and Gerald Gerhard (collectively, the "Individual Defendants") are the owners and operators of Gerhard's, have the power to hire and fire employees, controlled the work schedules for Plaintiff and other employees, and have an active role in all decision-making, employee rates of compensation, truck delivery records, and employment records. (Id. ¶¶ 10, 64–69.)

Under Gerhard's policy, if a customer's appliance order is over $999.00, Gerhard's offers free delivery. For orders under $999, if a customer is located in the Philadelphia area, Gerhard's describes its delivery process as including, "dropping off, installing your appliance and removing the old and taking it with us." (Id. ¶ 11.)

Between late February/early March 2017 through June 9, 2017, Plaintiff worked for Gerhard's as a Lead Delivery Driver. Gerhard's trained Plaintiff and required him to purchase and wear a shirt with the employer logo. During his tenure as a Lead Delivery Driver, Gerhard's had approximately eight, two-man truck delivery crews composed of a Lead Delivery Driver and a helper to deliver appliance purchases to Gerhard's customers' homes. Plaintiff was compensated at the rate of $40.00 for most delivery jobs and had no input into his rate of pay. According to the Amended Complaint, Gerhard's advised Plaintiff that he would be paid as a 1099 independent contractor and not as a W-2 employee, even though Defendants knew that Plaintiff could not be lawfully considered an independent contractor. (Id. ¶¶ 12–20.)

On a daily basis, Plaintiff reported for work at Gerhard's warehouse, located in Fort Washington, PA, at approximately 7:30 a.m. Plaintiff was required to load delivery trucks with new appliances to be delivered to Gerhard's customers, and would depart the warehouse by no later than 8:30 a.m. Each work day, Gerhard's assigned Plaintiff a delivery route by providing a

delivery sheet that showed a required sequence of customer delivery addresses. After each delivery was completed, Plaintiff was required to contact Gerhard's office to report job status. During the course of a work day, Gerhard's would frequently contact Plaintiff by cell phone to change the delivery schedule and give him other assignments. On certain occasions, Plaintiff would have to return to a Gerhard's store to pick up appliances for immediate delivery to a customer. (Id. ¶¶ 21–26.)

Gerhard's leased the delivery trucks used by its delivery crews from Enterprise Truck Leasing. These delivery trucks contained advertisements for Gerhard's on their sides and backs. Gerhard's directly paid the cost of all insurance for the trucks. Gerhard's also had deliveries made to its customers using at least one smaller delivery truck, not leased from Enterprise Truck Leasing, as well as small pickup trucks for small appliances. (Id. ¶¶ 27–30.)

Plaintiff was required to use one of the leased trucks and, during the latter term of his work, he used the smaller delivery truck not leased from Enterprise Truck Leasing. In order to carry out delivery assignments, Gerhard's required Plaintiff to "rent" a delivery truck from Gerhard's. Gerhard's maintained a set of keys for that truck, did not permit Plaintiff to take the assigned delivery truck home at the end of any work day, required that the delivery truck be stored and parked at Gerhard's warehouse at the completion of the delivery day, prohibited Plaintiff from using the assigned truck for anything other than the delivery of appliances to Gerhard's business, and required Plaintiff to pay for all gas used in operating the delivery trucks. Gerhard's also required Plaintiff to unload all appliances from the delivery trucks and place them in a scrap metal trailer stored on Gerhard's premises, but did not compensate Plaintiff for providing this service. Gerhard's sells the contents of each full scrap metal trailer and keeps the proceeds. (Id. ¶¶ 31–39.)

Plaintiff mainly delivered to Gerhard's customers located in Pennsylvania and rarely traveled out of state. Gerhard's deducted $400 per week from Plaintiff's pay for delivery truck rental, no matter how many days he worked per week, and deducted $50 per week from his pay for a fund to pay for any alleged damage caused as a consequence of a delivery (the "Retainer Fund"). Gerhard's used these funds at its sole discretion to reimburse customers for any alleged damage. Following the end of Plaintiff's tenure as a Lead Delivery Driver, Gerhard's failed to return the Retainer Fund balance of $910.00, despite the fact that Plaintiff did not cause any damages that would justify Gerhard's retention of that money. (Id. ¶¶ 40, 43–45.)

Gerhard's did not require Plaintiff to keep time records of the number of hours worked on a daily or weekly basis. Most weeks, Plaintiff worked ten to sixteen hours per day, between four to six days per week, and his work hours exceeded forty per week. Based upon the delivery stops Plaintiff was required to follow each work day, from March 1, 2017 to March 29, 2017, Plaintiff worked in excess of forty hours every week without additional pay. (Id. ¶¶ 46–49.)

On certain dates during the period March 2017 through June 5, 2017, Gerhard's required Plaintiff to perform extra work beyond making local appliance deliveries (the "Additional Work"). The Additional Work included labor for assembly of grills and special installations for Gerhard's customers; travelling long distances to make deliveries to locations such as Harrisburg, Pennsylvania and on two occasions, to the New York/Connecticut area; assembling gas grills at customer homes; and performing other labor related to appliances being delivered to Gerhard's customers. On certain occasions when Plaintiff was required to perform Additional Work, he was advised that he would receive additional compensation ranging from $10.00 to $680.00, depending on the Additional Work assigned. The agreement for the Additional Work compensation was allegedly an oral agreement between Plaintiff and Gerhard's. According to Plaintiff, Gerhard's

has failed to pay Plaintiff the agreed compensation for the Additional Work, which totals approximately $3,515.00. (Id. ¶¶ 50–52, 55.)

Gerhard's provides its full-time employees with employer-sponsored benefits, including retirement benefit plan eligibility contributions, bonuses, profit sharing, health insurance, and other employment benefits. Gerhard's did not provide Plaintiff with any of these benefits since it classified its Lead Delivery Drivers as independent contractors and not employees. Nor did Plaintiff receive any Federal Insurance Contribution Act ("FICA") contributions, unemployment benefit contributions, or worker's compensation benefits. (Id. ¶¶ 56–57, 61–63.)

On November 17, 2017, Plaintiff brought this case against Defendants. In his Amended Complaint, filed February 13, 2018, Plaintiff set forth claims under the FLSA, ERISA, the PMWA, the WPCL, and common law breach of contract. Defendants filed the current Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard.  Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014).  First, the court outlines the elements a plaintiff must plead to state a claim for relief.  Id. at 365.  Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth."  Id.  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'"  Id. (quoting Iqbal, 556 U.S. at 679).  The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (quoting Iqbal, 556 U.S. at 679).

## III. DISCUSSION

### A. FLSA Claim

"Congress enacted the FLSA in 1938 with the goal of protecting all covered workers from substandard wages and oppressive working hours."  Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 147 (2012) (citations and internal quotation marks omitted).  "The FLSA establishes federal minimum-wage, maximum hour, and overtime guarantees that cannot be modified by contract."  Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013).  It generally requires employers to pay an employee "who in any workweek is engaged in commerce" no less than the federal minimum wage, 29 U.S.C § 206(a), and to provide overtime compensation "at a rate not less than one and one-half times the regular rate" for each hour worked in excess of 40 hours a week.  29 U.S.C. § 207(a).  Section 216(b) provides a private right of action for violations of the

FLSA, including a suit by one or more employees filed on behalf of themselves and other similarly situated employees. 29 U.S.C. § 216(b).

"To state a claim under the FLSA for minimum wage and overtime compensation, plaintiffs must allege that: (1) they are employees of the defendant; (2) that their work [or their business's work] involved some kind of interstate activity [;] and (3) the approximate number of hours worked for which they did not receive these wages." Kehler v. Albert Anderson, Inc., No. 16-5318, 2017 WL 1399628, at *4 (D.N.J. April 18, 2017); see also Vargas v. St. Luke's Hosp. & Health Network, No. 12-5378, 2014 WL 1259571, at *7 (E.D. Pa. Mar. 27, 2014).

Defendants move to dismiss the FLSA claim on multiple grounds, alleging: (a) Gerhard's is not engaged in interstate commerce; (b) Plaintiff fails to allege individual liability for Defendants Charles "Bud" Gerhard III, Richard Gerhard, and Gerald Gerhard; (c) Plaintiff does not set forth a plausible claim for any minimum wage violations or unpaid overtime; and (d) the FLSA claim is barred by the motor carrier exemption.[2]

1. Interstate Commerce

The FLSA extends coverage to employees by two means: "(1) the employee himself may be engaged in commerce or in the production of goods for commerce (so-called 'individual' coverage) . . .; or (2) the employee may be employed in an enterprise engaged in commerce or the production of goods for commerce (so-called 'enterprise coverage.')." Kehler, 2017 WL 1399628,

---

[2]  Defendants also set forth a cursory argument that Plaintiff has failed "to allege any facts sufficient to support his threadbare conclusions that Gerhard's is an employer subject to the FLSA." (Defs.' Mem. Supp. Mot. to Dismiss 4.) The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). As the Amended Complaint alleges that Gerhard's hired and trained Plaintiff to work as a Lead Delivery Driver, I can plausibly infer that Gerhard's is an employer under the FLSA. (Am. Compl. ¶¶ 12–19.) Defendants offer no additional argument on this point and, therefore, I need not address it further.

at * 7. "Only those employees who are 'engaged in commerce or in the production of goods for commerce,' or who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce' may seek recovery under the FLSA's minimum and overtime wage provisions." Rummel v. Highmark, Inc., No. 13-87, 2013 WL 6055082, at *4 (W.D. Pa. Nov. 15, 2013).

Commerce is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Courts in this Circuit frequently hold that an allegation that the defendant was an enterprise engaged in commerce under the FLSA is sufficient for purposes of a motion to dismiss. Dong v. Ren's Garden, No. 09-5642, 2010 WL 1133482, at *4 (D.N.J. Mar. 22, 2010) (internal citations omitted); see also Razak v. Uber Techs., Inc., No. 16-573, 2016 WL 5874822, at *5 (E.D. Pa. Oct. 7, 2016) (holding that allegation that defendants were "employers in commerce within the meaning 29 U.S.C. § 203(e), 203(m), and 206(a)" is sufficient in the Third Circuit); Kehler, 2017 WL 1399628, at *7 (finding sufficient an allegation that plaintiff was "a W-2 employee of an enterprise engaged in commerce"); Rummel v. Highmark, Inc., No. 13-87, 2013 WL 6055082, at *4 (W.D. Pa. Nov. 15, 2013) (holding that allegations that defendant is a corporation organized and operating throughout Pennsylvania, allegations regarding defendant's hiring decision, facts concerning defendant's internal departmental organization, and allegations that defendant "was an employer subject to the Fair Labor Standards Act" were sufficient to state FLSA claim); Zebroski v. Gouak, No. 09-1857, 2009 WL 2950813, at *1 (E.D. Pa. Sept. 9, 2009) (noting that alleging that the defendant was an enterprise under the FLSA was sufficient "[f]or purposes of a motion to dismiss [and] . . . discovery will establish the amount of business actually done.").

Here, the Amended Complaint alleges that Gerhard's is a Pennsylvania corporation that operates five locations throughout the Delaware Valley area of Pennsylvania. (Am. Compl. ¶¶ 6, 10.) It goes on to state that Gerhard "is engaged in commerce, engaged in the production of goods for commerce and/or employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the [sic] 29 U.S.C. § 203(e)(1) of the FLSA" and is an "Employer" within the meaning of 29 U.S.C. § 203(e)(1) and (d) of the FLSA. (Id. ¶¶ 79, 81–82.) Plaintiff also provides some details about Gerhard's business, stating that it offers delivery services for its appliances, including, on occasion, to customers outside the state. (Id. ¶¶ 10, 11, 40.) For purposes of pleading, these allegations are sufficient to infer that Gerhard's is an "enterprise engaged in commerce."[3]

### 2. Individual Liability Against Charles "Bud" Gerhard III, Richard Gerhard, and Gerald Gerhard

The FLSA imposes individual liability on "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). Aside from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute "joint employers" for purposes of liability under the FLSA. Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 153 (3d Cir. 2014). The Third Circuit has addressed this identical provision in the context of the Family and Medical Leave Act and noted that "an individual is subject to FMLA liability when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest." Thompson, 748 F.3d at 153–54 (quoting Haybarger v. Lawrence Cnty. Adult Probation & Parole, 667 F.3d 408, 417 (3d Cir. 2012)); see also Mackereth v. Kooma, Inc., No.

---

[3] Having found enterprise coverage, I need not address Defendant's argument regarding individual coverage.

14-4824, 2015 WL 2337273, at *6 (E.D. Pa. May 14, 2015).  The focus is on "the totality of the circumstances rather than on technical concepts of the employment relationship."  Thompson, 748 F.3d at 154.

To determine whether a defendant is a plaintiff's "employer" within the meaning of that term under the FLSA, the Third Circuit constructed a multi-factor test.  In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig., 683 F.3d 462, 468 (3d Cir. 2012). The four enumerated factors include: (1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.  Id. at 469.  The court cautioned that "these factors *do not constitute an exhaustive list* of all potentially relevant facts, and should not be 'blindly applied.'"  Id. (emphasis in original); see also Schneider v. IT Factor Prods., No. 13-5970, 2013 WL 6476555, at *4 (E.D. Pa. Dec. 10, 2013).

The Third Circuit has held that allegations regarding individual supervisory authority need not be detailed or extensive to survive a motion to dismiss.  In Thompson v. Real Estate Mortgage Network, the amended complaint alleged that the individual defendants "made decisions concerning [the defendant company's] day-to-day operations, hiring, firing, promotions, personnel matters, work schedules, pay policies, and compensation."  748 F.3d at 146.  In addition, the amended complaint alleged that "[w]hen a work or personnel issue arose at [the company] that [plaintiff's] immediate supervisor could not address alone, "the supervisor would consult with, among others, [the individual defendants]."  Id. at 146.  The Court found that these limited

allegations regarding the individual defendants' substantial workplace decision-making authority and involvement in day-to-day operations were sufficient for purposes of the pleadings to draw the reasonable inference that the individual defendants were responsible for the misconduct alleged. Id. at 154.[4]

Here, similar to <u>Thomas</u>, the Amended Complaint sets forth adequate facts to raise a plausible inference that the individual Defendants are liable. The Amended Complaint pleads that Charles "Bud" Gerhard III is the President of Gerhard's, Richard Gerhard is the Vice President, and Gerald Gerhard is the corporate Secretary of Gerhard's. (Am. Compl. ¶¶ 7–9.) It further alleges that all three are principal owners of Gerhard's and maintain operational control over Gerhard's daily operations and business activities. (Id.) Finally, the Amended Complaint specifically asserts that the individual Defendants (a) are owners and operators of Gerhard's; (b) have the power to hire and fire employees of Gerhard's; (c) supervise and control the work schedules of employees of Gerhard's; (d) have an active role in corporate advising, policy-making and decision-making for Gerhard's; (e) determine the rate and method of compensation of employees of Gerhard's, including Lead Delivery Drivers; and (f) maintain responsibility for Lead Delivery Driver compensation records, truck delivery records, and employment records. (Id. ¶¶ 64–69.) No more factual specificity is required at this stage of the litigation. Taking these factual

---

[4]     <u>See also</u> <u>Schneider</u>, 2013 WL 6476555, at *4 (finding sufficient a complaint's assertion that the individual defendant is the President and Chief Executive Officer of the defendant company, maintains operational control over all of the company's daily operations and business activities, and is responsible for day-to-day operations of the company, including direct responsibility for supervision of employees); <u>Juan Su v. Guang Yang Li</u>, No. 10-5268, 2011 WL 3329882, at *5 (D.N.J. Aug. 1, 2011) (finding that a complaint pled sufficient facts to make it plausible that the individual defendants were employers under the FLSA where the complaint alleged that the individuals had the authority to hire and fire employees, determine compensation and work schedules, and "otherwise affect the quality and terms of employment" of the company's employees).

allegations as true, I can draw a plausible inference that the individual Defendants controlled day-to-day operations at Gerhard's and are "employers" under the FLSA.[5]

### 3. Allegations of a Minimum Wage or Unpaid Overtime Violation

"To recover overtime compensation under the FLSA, 'an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference.'" Davis v. Abington Mem. Hosp., 765 F.3d 236, 241 (3d Cir. 2014) (quoting Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986)). The Third Circuit has held that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a *given* workweek *as well as* some uncompensated time in excess of the [forty] hours." Id. at 241–42 (quotations omitted) (emphasis in original). The Court remarked that a plaintiff did not need to identify the exact dates and times that he worked overtime. Id. at 243. Rather, an allegation that a plaintiff "'typically' worked forty hours per work, worked extra hours during such a forty-hour work week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of *those* forty-hour weeks would

---

[5]      The cases cited by Defendants do not warrant a different outcome as the allegations in those cases were far more conclusory than those here.  Richardson v. Bezar, No. 15-0772, 2015 WL 5783685, at *2 (E.D. Pa. Oct. 10, 2015) (defendant failed to respond to the motion to dismiss and court found no allegations concerning defendant's relationship with the purported class of employees involved in the suit); Mackareth v. Kooma, Inc., No. 14-4824, 2015 WL 2337273, at *7 (E.D. Pa. May 14, 2015) (deeming insufficient the legal conclusion that the individual defendants were corporate officers who "exercise sufficient control over the labor policies and practices complained of herein to be considered the employers of Plaintiffs" within the meaning of the FLSA); Jochim v. Jean Madeline Educ. Ctr. of Cosmetology, Inc., No. 13-6564, 2014 WL 12606156, at *8 (E.D. Pa. July 30, 2014) (noting that facts suggesting day-to-day control of employment operations by the individual defendant were entirely missing from the plaintiff's complaint and that the gist of the allegations against the individual defendant were that he "personally participated in the unlawful practices alleged herein", "knew of, created and approved of the practices", and "shared in the proceeds of the unlawful practices"; "These allegations are insufficient to give rise to the inference that [the individual defendant] independently controlled the day to day operations at the salon.").

suffice" at the pleading stage.  Id.  (emphasis in original).  In short, "plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."  Id. (quoting Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013)); see also Diaz v. Counsins, Inc., No. 15-6620, 2016 WL 3165603, at *3 (E.D. Pa. June 7, 2016) (holding that plaintiff adequately alleged an overtime violation by stating, "Plaintiff worked approximately sixty-five to seventy hours during a typical week" and "never received overtime premium compensation for hours worked over forty per week.").

Here, the allegations of the Amended Complaint clearly set forth an overtime violation. Plaintiff asserts that he was compensated at the rate of $40 for most delivery jobs.  (Am. Compl. ¶ 16.)  He goes on to allege:

> 46.    Defendant Gerhard's did not require Plaintiff Ra to keep time records of the number of hours worked on a daily or weekly basis.
>
> 47.    Most work weeks Plaintiff Ra worked 10–16 hours per day, between four-six days per week and his work hours exceeded 40 hours per week.
>
> 48.    Based upon the delivery route stops that Plaintiff was required to follow by Defendant Gerhard's each work day, during each work week beginning March 1, 2017 through May 29, 2017, Ra worked in excess of 40 hours, given the location of the delivery stops and their sequencing, and the amount of time spend [sic] at the customer's home, Plaintiff Ra worked approximately the following number of hours each week:

| Period | Approximate Hours Worked |
| --- | --- |
| March 1, 2017-March 4, 2017 | 55 hours |
| March 6, 2017-March 11, 2017 | 84 hours |
| March 13, 2017-March 17, 2017 | 50 hours |
| March 20, 2017-March 23, 2017 | 56 hours |
| March 27, 2017-April 1, 2017 | 81 hours |
| April 3, 2017-April 7, 2017 | 67 hours |
| April 10, 2017-April 14, 2017 | 50 hours |

| | |
|---|---|
| April 17, 2017-April 22, 2017 | 66 hours |
| April 24, 2017-April 28, 2017 | 68 hours |
| May 1, 2017-May 5, 2017 | 67 hours |
| May 8, 2017-May 13, 2017 | 61.5 hours |
| May 15, 2017-May 29, 2017 | in excess of 53 hours |

49. Plaintiff Ra did not receive any additional pay when his weekly work total hours exceeded 40 hours.

(Am Compl. ¶¶ 46–49.) These allegations "provide sufficient detail about the length and frequency of [his] unpaid work to support a reasonable inference that [he] worked more than forty hours in a given week." Davis, 765 F.3d at 243. Accordingly, I deny the motion to dismiss on this ground.[6]

### 4. Motor Carrier Exemption

Section 7 of the FLSA requires employers to pay overtime compensation to employees who work more than forty hours per week, unless one or another of certain exemptions applies. 29 U.S.C. § 207(a)(1). One such exemption is the Motor Carrier Act exemption ("MCA exemption") found in Section 13(b)(1) of the FLSA. 29 U.S.C. § 213(b)(1). It provides that overtime pay is not required for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." Id.; Packard v. Pittsburgh Transp. Co., 418 F.3d 246, 250 (3d Cir. 2005). Through the MCA exemption, Congress has "prohibited the overlapping of . . . jurisdiction" between the U.S. Department of Labor and the DOT regarding "maximum hours of service." Resch v. Krapf's Coaches, Inc., 785 F.3d 869, 872 (3d Cir. 2015) (citing Levinson v. Spector

---

[6] Defendants' bald argument that Plaintiff "has wholly failed to make the specific allegations required under the governing pleading standard in Davis to support his FLSA claim," provides no basis for dismissal. (Defs.' Mem. Supp. Mot. to Dismiss 12.) Contrary to Defendants' contention, Plaintiff did not need to specifically plead the average hourly rate he was paid or the amount of overtime hours that he believes is due to him. Moreover, to the extent Defendants assert that Plaintiff failed to plead a minimum wage claim, it appears that Plaintiff did not intend to allege any such claim.

Motor Serv., 330 U.S. 649, 661 (1947)). The Third Circuit has noted that exemptions from the FLSA are construed narrowly against the employer and the employer bears the burden to prove "plainly and unmistakably" that its employees are exempt. Id.

"Two considerations dictate whether the MCA exemption applies: the class of the employer and the class of work the employees perform." Resch, 785 F.3d at 872 (citing 29 C.F.R. § 782.2(a)). "Specifically, the MCA exemption applies if the employer is a carrier subject to the DOT's jurisdiction and the employee is a member of a class of employees that 'engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA].'" Id. (citing 29 C.F.R. § 782.2(a)).

Here, Defendants urge that Gerhard's is a "motor private carrier" because it owns the goods and products it distributes, and the distribution is in furtherance of Gerhard's commercial business to sell quality products and goods. Defendants further contend that Plaintiff was a Lead Delivery Driver who sometimes drove the delivery truck across state lines in order to deliver goods for Gehard's. As such, Defendants posit that the MCA exemption applies.

It is unnecessary for me to fully analyze the applicability of the MCA exemption at this early stage of the litigation as Defendants have failed to address the impact of the Corrections Act of 2008 on the MCA exemption in the FLSA. Section 306(a) of that Act provides that "Section 7 of the Fair Labor Standards Act . . . shall apply to a covered employee notwithstanding section 13(b)(1) of that Act." See SAFETEA-LU Technical Corrections Act of 2008, PL 110-244, June 6, 2008, 122 Stat. 1572. Section 306(c) of the Corrections Act defines the term "covered employee" as an employee of a motor carrier whose job, "in whole or in part," affects the safe operation of vehicles lighter than 10,000 pounds, except vehicles designed to transport hazardous

materials or large numbers of passengers. Corrections Act § 306(c); McMaster v. Eastern Armored Services, Inc., 780 F.3d 167, 169 (3d Cir. 2015). With this change, an employee who works on or with non-commercial motor vehicles (i.e., vehicles weighing less than 10,000 pounds) may now be entitled to overtime compensation. Mayan v. Rydbom Express, Inc., No. 07-2658, 2009 WL 3152136, at *9 (E.D. Pa. Sept. 30, 2009). "Section 306(c) clearly states that the employee's work need only 'in whole or in part' affect the safety of operation of vehicles weighing 10,000 pounds or less. An employee working on a 10,001 pound vehicle two days a week and a 5000 pound vehicle the remaining days of the week appears to satisfy this requirement." Id.

Defendants have not acknowledged the impact of the Corrections Act on this case. Nor does anything in the Amended Complaint indicate that the weight of the vehicles on which Plaintiff worked while employed by Gerhard's exceeded the statutory weight required for application of the MCA exemption. Indeed, the Amended Complaint asserts that, during the latter portion of his employment, Plaintiff used a "smaller delivery truck." (Am. Compl. ¶¶ 31–32.) Absent any allegations that definitively determine the weight of the trucks driven by Plaintiff, Defendants cannot meet their burden to prove "plainly and unmistakably" that Plaintiff is exempt from the FLSA. This fact-specific analysis is more appropriately considered after discovery and on a properly-supported motion for summary judgment.

**B.    ERISA Claim**

Count II of the Amended Complaint alleges that Gerhard's administers and maintains company-sponsored employee benefit plans ("ERISA Employee Benefit Plans") on behalf of its employees. (Am. Compl. ¶ 87.) It further asserts that Plaintiff, as a Lead Delivery Driver, was improperly classified as an independent contractor and, thus, was not allowed to participate in the ERISA Employee Benefit Plans in violation of 29 U.S.C. § 1132(a)(1)(B). (Id. ¶¶ 90–91.)

16

Defendants respond that Plaintiff's ERISA claim must be dismissed for two reasons: (1) Plaintiff does not have standing to bring a claim under § 1132(a)(1)(B); and (2) Plaintiff has failed to aver that he exhausted the remedies available under the ERISA plan.

    1.    <u>Standing</u>

Under 29 U.S.C. § 1132(a), "a civil action may be brought—

> **(1)** by a participant or beneficiary--
> **(A)** for the relief provided for in subsection (c) of this section, or
> **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

29 U.S.C. § 1132(a). This section "restricts civil actions against a plan administrator to actions brought by a 'participant or beneficiary.' The requirement that the plaintiff be a plan participant is both a standing and a subject matter jurisdictional requirement." <u>Miller v. Rite Aid Corp.</u>, 334 F.3d 335, 340–41 (3d Cir. 2003) (quoting <u>Saporito v. Combustion Eng'g Inc.</u>, 843 F.2d 666, 670–71 (3d Cir. 1988)).

Under ERISA, a "participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). An employee is defined by ERISA as "any individual employed by an employer." 29 U.S.C. § 1002(6). A plaintiff must satisfy two requirements to establish participant status. "First, the plaintiff must be a common law employee. . . . Second, the plaintiff must be, 'according to the language of the plan itself, eligible to receive a benefit under the plan. An individual who fails on either prong lacks standing to bring a claim for benefits under a plan established pursuant to ERISA.'" <u>Bauer v. Summit Bancorp</u>, 325 F.3d 155, 160 (3d Cir. 2003),

Defendants do not challenge Plaintiff's pleading of the second requirement—whether Plaintiff is eligible to receive a benefit under the language of the ERISA plan at issue—but rather dispute only Plaintiff's "common law employee" status. "Given that ERISA's nominal definition of "employee" is completely circular, courts apply the common law test for determining who qualifies as an employee under ERISA." Schwartz v. Independence Blue Cross, 299 F. Supp. 2d 441, 446–47 (E.D. Pa. 2003) (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323–24 (1992)). Under this test, the following factors are considered:

> the hiring party's right to control the manner and means by which the product is accomplished, the skill required to perform the job, the source of the instrumentalities and tools, the location of the work, the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to work, the method of payment, the hired party's role in hiring and paying assistants, whether the work is part of the regular business of the hiring party, whether the hiring party is in business, the provision of employee benefits and the tax treatment of the hired party.

Schwartz, 299 F. Supp. 2d at 446–47.

Plaintiff here alleges that Gerhard's improperly classified him as an independent contractor. (Am. Compl. ¶ 91.) He avers that he was actually a common law employee of Gerhard's, as Gerhard's controlled the manner in which he worked, the days he worked, and the means by which he performed his work. (Id. ¶ 92.) Gerhard's also provided him with direction and how to go about his deliveries. (Id.) More specifically, Gerhard's trained Plaintiff as to how to perform his assigned duties, required Plaintiff to wear a shirt with the company logo, set Plaintiff's delivery route for him, required Plaintiff to check in during the work day to report job status, and frequently contacted Plaintiff by cell phone to carry out other assignments. (Id. ¶¶ 13–14, 22–26.) Taking these allegations as true, I find that Plaintiff has adequately alleged that he

was a common law employee for purposes of "participant" status. In turn, I find that, for purposes of the Motion to Dismiss, Plaintiff has standing.[7]

### 2. Failure to Exhaust

"Except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990). Courts require exhaustion of administrative remedies "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002) (quoting Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980)). Moreover, trustees of an ERISA plan "are granted broad fiduciary rights and responsibilities under ERISA . . . and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes." Id.

Nevertheless, a plaintiff is excused from exhausting administrative remedies under ERISA if the administrative process would be futile. Id. "Plaintiffs merit waiver of the exhaustion requirement when they provide a 'clear and positive showing of futility.'" Id. at 249 (quoting Brown v. Cont'l Baking Co., 891 F. Supp. 238, 241 (E.D. Pa. 1995)); see also Fallick v.

---

[7] Defendants contend that dismissal is appropriate where a former employee does not have a colorable claim to vested benefits because he was not enrolled in an ERISA plan. The Supreme Court has held, however, that "participant" is naturally read to mean *either* "employees in, or reasonably expected to be in, currently covered employment," *or* former employees who "have . . . a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits. Bruch, 489 U.S. 117–18. Plaintiff does not claim to be a former employee with a colorable claim to vested benefits, but rather an employee "in, or reasonably expected to be in, currently covered employment."

Nationwide Mut. Ins. Co., 162 F.3d 410, 419 (6th Cir. 1998) ("A plaintiff must show that 'it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.'") (quotations omitted). Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including: "(1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile. Of course, all factors may not weigh equally." Harrow, 279 F.3d at 250.

Notably, the exhaustion requirement is a nonjurisdictional affirmative defense. Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 280 (3d Cir. 2007). As an affirmative defense, the defendant bears the burden of proving failure to exhaust. Am. Chiropractic Ass'n v. Am. Specialty Health Inc., 625 F. App'x 169, 173 (3d Cir. 2015). Where it cannot be conclusively established from the complaint whether a plaintiff failed to adequately pursue administrative remedies or whether it would be futile to do so, an ERISA claim should not be dismissed for failure to exhaust. Id. at 173.

The Amended Complaint concedes that Plaintiff did not exhaust any administrative remedies with respect to his ERISA claim, but asserts that any efforts to do so would be futile. Specifically, he alleges that Gerhard's has "regularly engaged in a fixed policy in which it misclassifies its Lead Delivery Drivers as independent contractors and not employees, thereby denying Lead Delivery Drivers all employee benefits that Gerhard's provides to its employees." (Am. Compl. ¶ 58.) He goes on to argue that he does not have any insurance cards or membership numbers for any of the employee benefit plans that Gerhard's offers to its employees, thereby

making it futile for Plaintiff to exhaust any administrative remedies available under the Gerhard's employee benefit plans.  (Id. ¶¶ 59–60.)

Such allegations give rise to a plausible inference that it would be futile for Plaintiff to pursue administrative remedies.  As recognized by the Third Circuit, one of the ways futility may be shown is the existence of a fixed policy denying benefits.  Harrow, 279 F.3d at 250; Falcone v. Teamsters Health & Welfare Fund, 489 F. Supp. 2d 490, 496 (E.D. Pa. 2007).  Plaintiff has expressly alleged that Gerhard's had "regularly engaged in a fixed policy" to deny Lead Delivery Drivers employee benefits.  Therefore, I find that he has raised the plausible inference of futility for purposes of a motion to dismiss.

### C.   Pennsylvania Minimum Wage Act Claim

Defendants next move to dismiss Plaintiff's claim under the Pennsylvania Minimum Wage Act ("PMWA").[8]   The PMWA parallels the FLSA in requiring employers to compensate employees for overtime hours worked, and has an identical standard of liability as the FLSA in overtime violation claims.  See Baum v. Astrazeneca LP, 372 F. App'x 246, 248–49 (3d Cir. 2010) (applying analysis of overtime compensation violation claims under PMWA and FLSA interchangeably); Messmer v. Colors In Bloom, Inc., 67 F. App'x 719, 721 n.1 (3d Cir. 2003) (characterizing the standards of liability under PMWA and FLSA as identical).  "Pennsylvania courts have indicated that it is proper to give deference to the federal courts' interpretation of a federal statute when the state statute at issue substantially parallels the federal law."  Masterson v. Fed. Exp. Corp., No. 07–2241, 2008 WL 5189342, at *3 (M.D. Pa. Dec. 10, 2008).

---

[8]   Defendants argue that I need not consider the merits of Plaintiff's remaining state law claims because, assuming the FLSA and the ERISA claims are dismissed, I should not exercise supplemental jurisdiction over the state claims.  As set forth above, however, I decline to dismiss the two federal claims at this time and, therefore, I need not consider Defendants' argument.

Defendants seek dismissal of the PMWA claim because (a) the MCA exemption also applies to the state claim, and (b) the Amended Complaint fails to aver a single work week where Plaintiff's wages fell below the minimum wage standard.

As set forth in detail above, however, I cannot determine the applicability of the MCA exemption from the face of the Amended Complaint. Moreover, contrary to Defendants' belief, Plaintiff does not allege a claim for wages below the minimum wage standard, but rather seeks compensation for unpaid overtime assignments. As explained above, Plaintiff properly detailed multiple weeks where he worked overtime but was not properly compensated. Accordingly, I will deny the Motion to Dismiss this claim.

### D.    <u>Breach of Contract Claim</u>

In their next argument, Defendants seek to dismiss Plaintiff's breach of contract claim. They assert that Plaintiff fails to sufficiently aver: (1) the requisite elements for such a cause of action; (2) specific paragraphs within the agreements which Defendants supposedly breached; and (3) damages that Plaintiff allegedly sustained in relation to Defendants' purported breaches of the agreements. Moreover, Defendants contend generally that Plaintiff's "boilerplate conclusory assertions fail to aver sufficient facts to establish the existence of the contracts (including their essential terms)." (Defs.' Mem. Supp. Mot. to Dismiss 23.)

Under Pennsylvania law, parties asserting claims for a breach of an oral or express written contract must allege the following three elements to adequately state a claim: "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." <u>Deron v. SG Printing, Inc.</u>, No. 11-1934, 2012 WL 3992960, at *6 (M.D. Pa. Sept. 4, 2012) (quoting <u>Alpart v. Gen. Land Partners, Inc.</u>, 574 F. Supp. 2d 491, 502 (E.D. Pa. 2008)). Although every term of a contract need not be stated in complete detail, every element

must be specifically pleaded.  CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super.

Ct. 1999).  Clarity in the pleadings is "particularly important where an oral contract is alleged."

Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pa., 895 A.2d 595, 600 (Pa. Super. Ct. 2006).

The Amended Complaint sets forth the following factual averments in support of the breach

of contract claim:

> 50.     In making deliveries to Defendant Gerhard's customers, on certain dates during the period March 2017 through June 5, 2017, Gerhard's required Plaintiff Ra to perform extra work beyond making local appliance deliveries (hereinafter, "the Additional Work").  The Additional Work included labor for assembly of grills and special installations for Gerhard's customers, traveling long distances to make deliveries to locations such as Harrisburg, PA and on two occasions to the New York/Connecticut area; assembling gas grills at customer homes; and performing other labor related to appliances that were being delivered to Gerhard's customers.
>
> . . .
>
> 108.    Plaintiff Ra and Defendant Gerhard's entered into an agreement for the Additional Work.
>
> 109.    Defendant Gerhard's advised Plaintiff Ra that in exchange for performing the Additional Work, Ra would receive additional compensation which ranged from $10.00 to $680.00, depending on the Additional Work assigned.
>
> 110.    Defendant Gerhard's deducted $50.00 per week from Plaintiff Ra's pay for the Retainer Fund and agreed at the completion of Ra's work for Gerhard's[,] remaining retainer funds would be returned to Ra.
>
> 111.    The agreements between Defendant Gerhard's and Plaintiff Ra to perform and compensate Ra for the Additional Work and returned [sic] remaining retainer funds at the completion of work constitute oral agreements by which Plaintiff Ra agreed to provide the services and Defendant Gerhard's agreed to compensate in agreed upon amounts.
>
> 112.    The oral agreements between Plaintiff Ra and Defendant Gerhard's are legally binding contracts.

113.   Defendant Gerhard's has failed to pay Plaintiff Ra the agreed compensation for the Additional Work which totals approximately $3,515.00.

114.   Following the end of Plaintiff Ra's work as a Lead Delivery Driver, Defendant Gerhard's has failed to return to Plaintiff Ra retainer funds totaling $910.00.

115.   Plaintiff Ra relied upon the terms of contracts in performing his assigned duties.

116.   Defendant Gerhard's has breached the contracts by not paying Plaintiff Ra the agreed upon pay for the Additional Work and not paying the retainer funds.

117.   Plaintiff Ra has sustained damages as a result of Defendant Gerhard's breach of the contracts in the form of unpaid earnings and unpaid return of retainer funds.

(Am. Compl. ¶¶ 50, 108–117.)

Taking the allegations of the Amended Complaint as true, I find that Plaintiff has set forth sufficient facts to establish that (1) Plaintiff and Defendants entered into oral contracts for payment of additional sums for the Additional Work and for the return of retainer funds; (2) Defendants breached those oral contracts by failing to either pay Plaintiff for the Additional Work or to return the retainer funds; and (3) Plaintiff suffered damages for each of the breaches in the amounts of $3,515 and $910 respectively. The Twombly/Iqbal standards of pleading do not require the level of specificity demanded by Defendants. Therefore, I find no merit to this portion of the Motion to Dismiss.

### E.   Pennsylvania Minimum Wage and Collection Law Claim

The WPCL provides that "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employes [sic] on regular paydays designated in advance by the employer." 43 Pa. Cons. Stat. § 260.3(a). "The purpose of the WPCL is to allow employees to

recover wages and other benefits that are due from employers pursuant to agreements between the parties." Killian v. McCulloch, 850 F. Supp. 1239, 1255 (E.D. Pa. 1994).

"[A] prerequisite for relief under the WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid . . . Relief under the WPCL is implausible without [the] existence of a contract." Lehman v. Legg Mason, Inc., 532 F. Supp. 2d 726, 733 (M.D. Pa. 2007). In other words, "to sustain [a] wage-payment claim[], [the plaintiff] must demonstrate that he was contractually entitled to compensation and that he was not paid." Divenuta v. Bilcare, Inc., No. 09–3657, 2011 WL 1196703, at *9 (E.D. Pa. Mar. 30, 2011). "The contract between the parties governs in determining whether specific wages are earned." Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990). "The mere fact that certain compensation is not payable until a future date is not necessarily fatal to a WPCL claim so long as the employee is deemed to have 'earned' it during his employment." Riseman v. Advanta Corp., 39 F. App'x 761, 765 (3d Cir. 2002).

Defendants argue that Plaintiff has failed to allege facts sufficient to support the existence of a contractual relationship between the parties. They contend that Plaintiff "makes no attempt to articulate when Defendants allegedly failed to pay Plaintiff, what paychecks he did not receive and in what amount he is claiming he did not receive them." (Defs.' Mem. Supp. Mot. to Dismiss 24.) Further, Defendants claim that the Amended Complaint does not aver when the payments were allegedly due, in what amounts the payments should have been, and the number of hours and type of work Plaintiff performed for Defendants that went uncompensated. (Id.) They conclude that "Plaintiff's own failure to identify a single instance of uncompensated time contrary to an independent contractual obligation is again fatal to his claim." (Id.)

Defendants' argument is misplaced. When "employees do not work under an employment contract or a collective bargaining agreement," a plaintiff may access the WPCL by establishing "the formation of an implied oral contract between [the employer] and its employees." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003); see also Braun v. Wal-Mart Stores, 24 A.3d 875, 954 (Pa. Super. Ct. 2011) ("[A]bsent a formal employment contract or collective bargaining agreement, an employee raising a WPCL claim would have to establish, at a minimum, an implied oral contract between the employee and employer.").

"Under Pennsylvania law, an implied contract arises when parties agree on the obligation to be incurred, but their intention, instead of being expressed in words, is inferred from the relationship between the parties and their conduct in light of the surrounding circumstances." Oxner v. Cliveden Nursing & Rehabilitiation Ctr. PA, L.P., 132 F. Supp. 3d 645, 649 (E.D. Pa. 2015). "An offer and acceptance need not be identifiable and the moment of formation need not be precisely pinpointed." Id. (citing Ingrassia Constr. Co., Inc. v. Walsh, 486 A.2d 478, 483 (Pa. Super. Ct. 1984)). "[A] promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service." Id. (quoting Martin v. Little, Brown & Co., 450 A.2d 984, 987 (Pa. Super. Ct. 1981)). "A promise to pay for services can only be implied, however, in circumstances under which the party rendering the services would be justified in entertaining a reasonable expectation of being compensated by the party receiving the benefit of those services." Id. Courts have repeatedly allowed WPCL claims to proceed where the plaintiff properly pled the existence of an implied contract. See, e.g., id. at 649–50 (finding that, despite absence of written employment agreement, the plaintiff sufficiently stated a WPCL claim for the additional hours she worked from home at her normal hourly rate);

<u>Gordon v. Maxim Healthcare Servs., Inc.</u>, No. 13-7175, 2014 WL 3438007, at \*4 (E.D. Pa. July 15, 2014) (finding an implied oral contract to be plausibly pled where plaintiff averred that she provided services as a home healthcare aide in exchange for wages to be paid); <u>Euceda v. Millwood, Inc.</u>, No. 12-0895, 2013 WL 4520468, at \*5 (M.D. Pa. Aug. 26, 2013).

Again accepting all the factual allegations of the Amended Complaint as true, I find that Plaintiff has, at minimum, sufficiently pled the existence of an implied employment agreement between him and Gerhard's. As set forth above, the Amended Complaint alleges that, during the course of his employment with Gerhard's, Gerhard's asked Plaintiff to perform Additional Work—such assembly of gas grills and installations of appliances—in exchange for additional compensation ranging from $10.00 to $680.00, depending on the work assigned. Gerhard's, however, failed to pay Plaintiff the agreed compensation, totaling approximately $3,515.00. These assertions are sufficient to allege an implied oral contract for wages upon which Plaintiff maintained a reasonable expectation of being compensated by Gerhard's. Defendants' demand for additional details attempts to impose a higher burden of proof on Plaintiff than is required at the motion to dismiss stage. As Plaintiff has set forth factual allegations that raise a more than speculative right to relief under the WPCL, I decline to dismiss this cause of action.

## IV.    CONCLUSION

In light of the foregoing, I find that Plaintiff has adequately plead his causes of action under <u>Twombly</u>/<u>Iqbal</u> standards. Accordingly, I will deny Defendants' Motion to Dismiss in its entirety. An appropriate Order follows.